<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**JOSHUA NAHAS**,

    Plaintiff,

v.

**FOXHILL CAPITAL PARTNERS,** *et al.*,

    Defendants.

Civil Action No. 21-7740 (ZNQ) (JBD)

**OPINION**

<u>**QURAISHI, District Judge**</u>

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Foxhill Capital Partners LLC, Neil Weiner, and Patricia Young (collectively, "Defendants") for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion"). (ECF No. 5.) Defendants filed a brief in support of the Motion ("Moving Br.", ECF No. 5-1) with a declaration of Jonathan S. Krause and exhibits in support of the Moving Br.  (ECF Nos. 5-2, 5-3, and 5-4.)  Plaintiff Joshua Nahas ("Plaintiff") opposed the Motion ("Opp'n Br.", ECF No. 7) and submitted a Certification in Opposition to the Motion to Dismiss with an exhibit. (ECF No. 7-1.) Defendants filed a reply brief in further support of the Motion.  ("Reply Br.," ECF No. 8.)  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1.  For the following reasons set forth below, the Court will GRANT Defendants' Motion to Dismiss.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On April 1, 2021, Plaintiff filed his complaint ("Complaint", ECF No. 1), alleging Defendants' unlawful termination of his employment in retaliation for Plaintiff's "blowing the whistle" on Defendants' alleged unlawful and unethical business practices in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA") and New Jersey common law. (*Id.* at ¶ 1.)

Plaintiff is a New York citizen and resident. (Complaint ¶ 5.) In August of 2011, Defendant Foxhill Capital Partners LLC ("Foxhill") hired Plaintiff as a part-time consulting analyst. (*Id.* ¶ 20.) After 2012, Plaintiff worked exclusively for Foxhill. (*Id.* ¶ 21.) Plaintiff was issued a Foxhill email, authorized to speak to lawyers, analysts, management of companies, traders, and salespeople on Foxhill's behalf, as well as sign documents such as non-disclosure and confidentiality agreements related to investment opportunities. (*Id.*; ECF No. 7-1 ¶ 8.) On June 19, 2015, Plaintiff and Foxhill entered into a consulting agreement (the "Consulting Agreement"), which included a choice of law provision expressly specifying that the consulting agreement is governed by New Jersey law. (Complaint ¶ 9, ECF No. 7-1.)

Through at least September 28, 2018, Foxhill was a New Jersey corporation with its principal place of business in Princeton, New Jersey. (*Id.* at ¶ 8; ECF No. 5-3.) Foxhill later changed its registration to Delaware and moved its principal place of business to Florida, but maintained an office with one or more employees located in New Jersey until September of 2019.[1]

---

[1] The date on which Foxhill says it terminated all relationship with New Jersey is in conflict with Plaintiff's assertion. Defendants state "beginning no later than September 28, 2018, and continuing through the present, Foxhill terminated all relationship with New Jersey by closing its sole New Jersey location and converting to a Delaware entity with headquarters in Florida." (ECF No. 5-1.) The Court notes "the present" is April 29, 2021—the date when Defendant's Moving Br. was filed.

(*Id.*; ECF No. 7-1 ¶ 11.) Plaintiff alleges that Foxhill continues to do business in New Jersey. (ECF No. 7 ¶ 18.)

Defendant Neil Weiner ("Weiner") is a Florida resident. (ECF No. 1 ¶ 10.) Weiner is the founder, managing member, controlling owner, and Chief Investment Officer of Foxhill. (*Id.*) Additionally, Weiner and his wife, Laura Weiner owned one hundred percent of Foxhill and were entitled to one hundred percent of the profits generated from Foxhill. (*Id.* at ¶ 11.) Defendant Patricia Young ("Young") is a Rhode Island resident. (*Id.* at ¶ 10.) Young is the Chief Compliance Officer of Foxhill and a limited partner in the Foxhill Opportunity Fund L.P. (the "Fund"). (*Id.*) Foxhill is the general partner of the Fund with several investors in the Fund being residents of New Jersey. (*Id.* at ¶ 9.) Defendants Weiner and Young supervised and controlled the activities of Plaintiff. (*Id.* at ¶ 12.) Weiner had the sole authority to hire and terminate employees at Foxhill. (*Id.*)

Plaintiff travelled to New Jersey from New York to work in Foxhill's Princeton office 1–2 times per week and would stay several weeks in New Jersey when training new hires or when Weiner was traveling for extended periods. (ECF No. 7, ECF No. 7-1 ¶¶ 11—13.) Foxhill also employed a small number of other investment analysts that comprised two senior analysts, up to four junior analysts, a fund controller, an operations manager, and a bookkeeper. (ECF No. 1 ¶ 19.)

As a condition of employment, Plaintiff signed the "Employee Acknowledgement of Receipt [and] Compliance Attestation with Compliance Manual" within Foxhill's Compliance Manual (the "Compliance Manual") each year starting in 2014 through January of 2020. (ECF No. 7-1 ¶ 16, ECF No. 5-4.) Also, Plaintiff signed the Foxhill Code of Ethics (the "Code of Ethics") containing Foxhill's whistleblower policy and anti-retaliation provisions. (*Id.* ¶ 16.)

According to Plaintiff, in the first half of 2020, Weiner repeatedly engaged in unethical and illegal behavior, including misuse of soft dollars, insider trading, and attempted market manipulation. (*Id*. ¶¶ 28–53.) In several instances, Plaintiff cautioned against and/or refused to participate in Weiner's schemes. [*See id.*]

On June 16, 2020, when Plaintiff was asked to sign a revised version of the Compliance Manual and the Foxhill Code of Ethics, he refused to sign them because he knew of Weiner's misconduct. (Complaint ¶ 54.) The next day, Plaintiff instead submitted a written notification disclosing Weiner's misconduct to Young in her capacity as Foxhill's compliance officer. (*Id*. ¶ 55.) Plaintiff's written notice emphasized his "reasonable belief" that the actions and activities described constituted violations of law and ethical obligations, including breaches of fiduciary duties, conflicts of interest, fraud, violations of Section 28(e) of the Securities and Exchange Act, and violations of SEC Rule 144A. (*Id*. ¶ 56.) Upon receipt of Plaintiff's written notice, Young informed Plaintiff that Foxhill had asked its attorney to investigate the allegations. (*Id*. ¶ 58.) An attorney for Plaintiff then sent Foxhill's counsel a report that supplemented his June 17 written notice. On June 25, 2020, Plaintiff reported to Young via email that Weiner violated the company's insider trader policy, engaged in the trading option of GNC Holdings while the stock was on the Foxhill restricted list, and Weiner was in possession of material non-public information. (ECF No. 1 ¶ 60.)

According to the Complaint, adverse actions against Plaintiff began almost immediately. On June 26, 2020, Weiner demanded that Plaintiff send him "a summary of what you accomplished today," and threatened termination for Plaintiff's "refusal to call me when asked," referring to a call that Weiner conceded was not work related. (*Id*. ¶ 63.) Weiner abruptly diminished Plaintiff's responsibilities with respect to managing the relationship with a particular client, asserting full

4

control over communications with that client, and forbidding Plaintiff from responding to or forwarding emails or documents relating to its investments. (*Id.*) Soon thereafter, Weiner and Foxhill terminated Plaintiff's employment on June 30, 2020. (*Id.* ¶ 64.)

Plaintiff filed his Complaint on April 1, 2021. Defendants responded with the pending Motion to Dismiss.[2]

## II.  LEGAL STANDARD

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (interior quotation marks omitted). "If the district court does not hold an evidentiary hearing, 'plaintiff[s] need only establish a prima facie case of personal jurisdiction.'" *Id.* (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). The court is "required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330.

In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citation omitted). New Jersey's long-arm statue "provides for jurisdiction up to the limits of the protection afforded to nonresidents by the Due Process Clause of the Fourteenth Amendment." *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992)). A court has jurisdiction, therefore, if it is determined that the defendant has "certain minimum contacts with [New Jersey] such that the

---

[2] The Court briefly set aside the current Motion to Dismiss and issued an Order to Show Cause to confirm its subject matter jurisdiction. (ECF No. 10.) When the Court was satisfied with Plaintiff's timely response in support of subject matter jurisdiction, it withdrew its Order to Show Cause. (ECF No. 12.)

5

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Federal courts are authorized to exercise two types of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). General jurisdiction exists when a defendant's "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 119, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, general jurisdiction applies when an individual or corporation is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("'[A]n individual's domicile, or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137. "[I]n an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139). "[T]he inquiry [in *Daimler*] 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* at 1559 (third alteration in original).

In contrast, specific jurisdiction allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and if the prior two requirements are met, a court may consider whether (3) the exercise of jurisdiction comports with fair play and substantial justice. *Sandy Lane Hotel Co.*, 496 F.3d at 317 (citation omitted). Defendants need not be physically located in the forum state while committing

the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984). A single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n.18.

## III.     DISCUSSION

### A.     General Jurisdiction

Defendants argue that the Complaint fails to allege their contact with New Jersey after 2018. (Moving Br. at 4.)[3] According to Defendants, the Complaint expressly acknowledges that Foxhill closed its New Jersey office, cancelled its New Jersey registration, incorporated in Delaware, and relocated to Florida. (*Id.*) Defendants Weiner and Young are residents of Delaware and Florida, respectively. (*Id.*) Defendants argue that, on the whole, there is no basis to establish general jurisdiction over any Defendant at the time this suit was filed, at the time the alleged adverse action was taken, or at the time that Plaintiff purportedly engaged in protected activity. (*Id.*)

Whatever the precise timing of Foxhill's relocation, it is clear from the Complaint that in 2021 when this case was filed, Foxhill was a Delaware corporation with its principal place of business in Florida. (*See* Complaint ¶¶ 7–8.) The same is true as of 2020, when Plaintiff disclosed Weiner's improper activities to Foxhill's compliance officer and he was allegedly terminated for that reason. Therefore, the Court finds no basis to conclude that Defendants would be essentially at home in New Jersey to satisfy general jurisdiction. The Court therefore turns next to considering specific jurisdiction.

---

[3] In a footnote, Defendants acknowledge that the Complaint alleges 2019 contact with New Jersey, but they insist that Foxhill closed its New Jersey office in 2018. (Moving Br. at 4 n.5)  In support, Defendants submit a certificate of cancellation filed with the New Jersey Department of Revenue. (Exhibit A to Moving Br.) The certificate states that the reason for cancellation is that "[e]ffective September 1, 2018, [Foxhill] no longer holds a principal office address in the State of New Jersey." (*Id.*)

B.     **Specific Jurisdiction**

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, a defendant is subject to specific jurisdiction if the claims in the lawsuit arise out of or are related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

In evaluating whether a non-resident defendant meets the requirements of sufficient minimum contacts, courts in the Third Circuit consider whether the contacts are "purposely directed" at a resident of the forum state, where "the injury arises from or is related to those activities," such that the defendant should reasonably anticipate being haled into court there. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant's purposefully directed activities occur when the defendant "purposefully avails itself of the privilege of conduct activities within the forum State," and subsequently invokes "the benefits and protections of its law." *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 109 (1987) (quotations omitted).

The Complaint alleges two claims: Defendants' violation of CEPA (Count I) and breach of contract by Foxhill of the agreement created by its Compliance Manual (Count II).

As to the CEPA claim, Defendants contend the alleged whistle-blowing activity took place in 2020, when Plaintiff worked from New York and Defendants were physically located in Rhode Island and Florida. (*Id.*) Defendants further argue the alleged decision to retaliate took place in Rhode Island and Florida. (*Id.*) Moreover, any impact of the alleged retaliation was felt in New York, where Plaintiff resides. (*Id.*) According to Defendants, none of the activities that gave rise

to Plaintiff's CEPA claim occurred in New Jersey and there is no ground to find specific jurisdiction in New Jersey over such claim. (*Id.*) As to the breach of contract claim, Defendants argue it too lacks a connection to New Jersey because the Compliance Manual was issued in 2020 after Foxhill had ended its ties with New Jersey and because Plaintiff admits he refused to sign the Compliance Manual. (*Id.*)

Plaintiff insists that Defendants have purposely directed their activities at New Jersey. He emphasizes the choice-of-law provision from the Consulting Agreement that specifies the laws of New Jersey as evidence that Foxhill "contemplated future consequences" in New Jersey, and purposely availed itself of the benefits and protections of this forum's state law. (Opp. Br. at 9–12.) Plaintiff also emphasizes the New Jersey-related allegations of his Complaint. (*Id.* at 12–13.)

On reply, Defendants reiterate their prior points and note that the choice-of-law provision upon which Plaintiff relies is explicitly limited to the interpretation and application of the Consulting Agreement. (Reply Br. at 5.)

The Court has carefully reviewed the Complaint. Unfortunately for Plaintiff, the bulk of his allegations pertain to contacts between Defendants and New Jersey that are outside of the scope of his claims. Notably, Plaintiff's claims are not themselves directed at Defendants' underlying misconduct. His claims pertain instead to his dismissal for their disclosure.

As to his CEPA claim, Plaintiff must plausibly allege four elements: (1) he reasonably believed that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a "whistle-blowing" activity; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *See Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 568 (3d Cir. 2005) (citation omitted). Review of the Complaint

9

makes clear that none of these elements are alleged to have taken place in New Jersey nor has Plaintiff claimed to have sustained an injury in New Jersey.

Plaintiff's breach of contract claim fares no better. To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages. *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's,* 199 N.J. Super. 212, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). The Compliance Manual that Plaintiff purports to form an enforceable contract was not issued either from or to New Jersey, nor does it specify New Jersey law or venue. Likewise, none of the allegedly breaching acts were performed in or directed towards New Jersey. Finally, no injury was felt in New Jersey. Therefore, there is no basis in the alleged breach of contract claim for asserting personal jurisdiction over Foxhill or any of the other defendants.

Plaintiff erroneously ascribes substantial weight to the Consulting Agreement's choice of law provision that specifies New Jersey law. The choice of law provision is not persuasive for at least two reasons. First, it is the Compliance Manual—not the Consulting Agreement—that Plaintiff asserts Foxhill breached. Second, as observed by Defendants: the choice of law provision of the Consulting Agreement explicitly limits itself to application to that agreement. (*See* Consulting Agreement Section 16, attached as Exhibit A to Certification of Joshua Nahas, ECF No. 7-1) ("*This Agreement* shall be governed by and construed in accordance with the laws of New Jersey (regardless of such state's conflict of laws principles) and without reference to any rules of construction regarding the party responsible for drafting thereof.") (emphasis added.)

On the whole, the Court concludes that this litigation does not arise from activities in New Jersey such that exercising specific jurisdiction over Defendants would comport with fair play and substantial justice. Accordingly, the Complaint will be dismissed for lack of personal jurisdiction[4].

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss for lack of personal jurisdiction and dismiss this matter without prejudice. Plaintiff will be given an opportunity to file an Amended Complaint to address the defects identified in this Opinion within 30 days. An appropriate Order will follow.

Date: **November 29, 2023**

                                                                                           **ZAHID N. QURAISHI**
                                                                                          **UNITED STATES DISTRICT JUDGE**

---

[4] Insofar as the Court will dismiss the Complaint for lack of personal jurisdiction under FRCP 12(b)(2), it does not reach Defendants' 12(b)(6) arguments.